**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Kirk Cahill, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>The Topps Company, Inc.,<br><br>Defendant. | : | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kirk Cahill ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, brings this Class Action Complaint against Defendant The Topps Company, Inc. (collectively "Defendant") and alleges upon personal knowledge as to himself and upon information and belief as to all other matters as follows:

NATURE OF THE ACTION

1. This is a consumer protection class action arising from Defendant The Topps Company, Inc.'s ("Topps") deceptive marketing and sale of the 2025–26 Topps Chrome® Basketball Mega Box (the "Product").

2. Topps prominently advertised on the exterior packaging of the Product that purchasers could "Chase Exclusive Blue X-Fractors," representing that the product offered consumers a chance to obtain a rare, limited-supply chase card.

3. The label of the Product is depicted below:




4. In truth, the Product contained no Blue X-Fractor cards at all, and purchasers had zero chance of obtaining the advertised chase card.

5. After consumers had already purchased the product, Topps admitted—via both a direct email to purchasers and a public statement on its official social-media account—that the "Chase Exclusive Blue X-Fractors" claim on the packaging was false and resulted from a purported printing error.

6. Plaintiff and Class members paid a price premium for the Product based on this false representation, paying more than they otherwise would have paid for a product that falsely promised a scarce Blue X-Fractor chase card, and were injured as a result.

## FACTUAL BACKGROUND

7. Trading card products such as the Product are marketed and sold based on the chance of pulling rare "chase" cards, which significantly increase a product's expected value to consumers.

**8.** Topps positioned the Product as a premium product by labeling the Product as containing Blue X-Fractor parallels. This is further reflected in the pricing of the Product. The Product went to market with an MSRP of $84.99. This is materially higher than the MSRP of similar Topps products such as 2025 Topps Chrome Baseball Mega Box which had an MSRP of $69.99 and did not advertise the chance to pull Blue X-Fractor parallels.

9. In the trading-card marketplace, Blue X-Fractor parallels are typically serial-numbered to indicate limited production and heightened scarcity, whereas standard X-Fractor parallels—often silver or uncolored—are typically not serial-numbered and are produced in materially greater quantities.

10. Serial numbering is a widely recognized indicator of rarity among collectors and directly correlates with secondary-market value.

11. This distinction is reflected in real market pricing for Topps-produced basketball cards tracked by established hobby pricing services. According to SportsCardsPro.com, a 2024 Topps Finest LeBron James standard X-Fractor card (#239), which is not serial-numbered, has a current ungraded market value of approximately $5.50. By contrast, SportsCardsPro.com reports

that a 2024 Topps Finest LeBron James Blue X-Fractor card (#45), which is serial-numbered to a limited print run, has a substantially higher ungraded market value of approximately $14.99. These pricing data demonstrate that collectors assign a material price premium to serial-numbered Blue X-Fractor cards relative to non-numbered standard X-Fractors.

12. By advertising the opportunity to "Chase Exclusive Blue X-Fractors," Topps communicated to reasonable consumers that the Product offered a chance to obtain a scarce, serial-numbered chase card—materially increasing the product's expected value and justifying a higher purchase price relative to Product offering only standard, non-numbered X-Fractors.

13. In or about January 13, 2026, after the Product had already been sold nationwide, Topps sent an email to purchasers admitting that the Blue X-Fractor statement on the packaging was false and that no Blue X-Fractor cards were included in the product. A copy of that email is depicted below:

topps All Products Topps NOW®

Dear Topps Collector,

We are reaching out to provide you with additional information regarding the 2025-26 Topps Chrome® Basketball – Mega Box.

The box states "Chase Exclusive Blue X-Fractors." Unfortunately, this is a print error on the packaging. While Blue X-Fractors are not included in this product, base X-Fractors are available. This information is accurately reflected on the odds page on Topps.com.

We sincerely apologize for any confusion this may cause and appreciate your understanding. Thank you for your continued support.

Sincerely,
Topps Collector Support

14. Shortly thereafter, Topps also publicly acknowledged on its official social-media account that the "Chase Exclusive Blue X-Fractors" language on the Product packaging was incorrect and confirmed that Blue X-Fractor cards were not included in the product.

15. Topps did not offer refunds, replacements, or any other compensation to consumers who purchased the Product based on the false packaging claim.

16. As a result of Topps' deception, Plaintiff and Class members paid more for the Product than it was worth, paid a price premium attributable solely to the nonexistent Blue X-Fractor chase feature, and did not receive the benefit of their bargain.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that (1) this is a class action involving more than 100 class members; (2) at least one member of the Class is a citizen of a state different from Defendant; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

18. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

19. Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

**PARTIES**

20. Plaintiff Kirk Cahill is a citizen and resident of Queens, New York. In January 2026, Plaintiff purchased the Product in a brick and mortar retailer in New York. Plaintiff paid a premium for the Product based on the Misrepresentation. Plaintiff would not have paid as much for the Product if the Misrepresentation had not been made on the Product label.

21. Defendant The Topps Company, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in New York. Defendant manufactures and advertises the Product in New York and throughout the United States.

## CLASS ALLEGATIONS

22. Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

23. The Class is defined as all consumers who purchased the Product in the State of New York at any time during the Class Period (the "Class").

24. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

25. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

26. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Product;

c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Product;

d. Whether Defendant's false and misleading statements and omissions concerning its Product were likely to deceive the public; and

e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

27. Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Product. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

28. Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

29. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

30. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

1. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;
2. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;
3. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;
4. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;
5. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;
6. This class action will assure uniformity of decisions among Class Members;
7. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;
8. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

9. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Product.

31. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and Class)**

32. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

33. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

34. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the Class Members seek monetary damages against Defendant.

35. There is no adequate remedy at law.

36. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Product to consumers.

37. Defendant engaged in consumer-oriented conduct by marketing, advertising, labeling, and selling the Product throughout New York, including through Defendant's website, and national advertising campaigns.

38. Defendant represented expressly that the Product offered the chance to pull rare Blue X-Fractor parallel cards. This was a misrepresentation because Blue X-Fractor parallel cards are not included in the Product.

39. Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and the Class Members to purchase Defendant's Product and to use the Product when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

40. Plaintiff and the Class Members have been injured inasmuch as they purchased Product that were mislabeled. Plaintiff and the Class Members paid a premium based on the Misrepresentation which was false. Accordingly, Plaintiff and the Class Members received less than what they bargained and paid for.

41. Defendant's advertising and Product' packaging and labeling induced Plaintiff and the Class Members to buy Defendant's Product.

42. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class Members have been damaged thereby.

43. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the Class Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the Class)**

44. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

45. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

46. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

47. Defendant's labeling and advertisements contain the untrue and materially misleading Misrepresentation.

48. Defendant's Misrepresentation is false and misleading because, in reality, there is no possibility to pull a rare Blue X-Fractor parallel card from the Product.

49. Plaintiff and the Class Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Product that were mislabeled. Accordingly, Plaintiff and the Class Members received less than what they bargained and paid for.

50. Defendant's advertising, packaging, and Product' labeling induced Plaintiff and the Class Members to buy Defendant's Product.

51. Defendant made its untrue and/or misleading Misrepresentation willfully, wantonly, and with reckless disregard for the truth.

52. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

53. Defendant made the Misrepresentation described in this Complaint in its advertising and on the Product' packaging and labeling.

54. Defendant's material Misrepresentation was uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations.

55. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and Class Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Awarding monetary damages, restitution damages and treble damages;

(c) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated: January 30, 2026

**FURIA LAW, LLC**

By: Philip Furia

Philip J. Furia
880 Third Avenue, Fifth Floor
New York, New York 10022
Tel : 646-830-1915
furiap@furiafirm.com

*Counsel for Plaintiff and the Class*